UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

DORMIN SHIPPING S.A.,

                 Plaintiff,

    - against -

DOMINION BULK INTERNATIONAL S.A. and
AEGEAN MARITIME AGENCY INC.,

                 Defendant.

------------------------------------------------------------X

JUDGE CROTTY

08 CV 0995

ECF CASE

JAN 30 2008

U.S.D.C. S.D. N.Y.
CASHIERS

## VERIFIED COMPLAINT

Plaintiff, DORMIN SHIPPING S.A. (hereinafter "Plaintiff" or "Owner"), by and through

its attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against the

Defendant, DOMINION BULK INTERNATIONAL S.A., (hereinafter "Defendant" or

"Charterer" or "Dominion") and AEGEAN MARITIME AGENCY INC. (hererinafter

"Aegean") alleges, upon information and belief, as follows:

    1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and 28 United States Code § 1333.  Jurisdiction over this

matter is also present pursuant to the Federal Arbitration Act, 9 United States Code § 1 *et seq.*,

and this Court's federal question jurisdiction, 28 United States Code § 1331.

    2.    At all times material to this action, Plaintiff was, and still is, a foreign corporation,

or other business entity organized and existing under the laws of the Marshall Islands.

    3.    Defendant Dominion was, and still is, a foreign corporation, or other business

entity organized and existing under the laws of Liberia.

4.     Defendant Aegean was and still is a foreign corporation or other business entity organized and existing under foreign law, and was, and still is, at all material times a paying/receiving agent of Dominion.

5     At all material times, Plaintiff was the Owner of the motor vessel "CAPETAN MINAS" (hereinafter the "Vessel").

6.     By charter party and fixture recap dated July 14, 2006, Plaintiff chartered the Vessel to Defendant for "one tct via sps, sbs, sas aaaa alw w/in iwl cargo from Texas to Greece or Turkey with green delayed petcoke, dur abt 30 ds wog." *A copy of the Fixture Recap is annexed hereto as Exhibit "1"*.

7.     Alternatively, by an alleged Addendum dated July 17th 2006, Plaintiff time chartered the Vessel to Defendant Charterer "In direct continuation of Time Charter Party April 6th 2006...Commencing Aug. 20th 2006 to be extended for Min 5 months up to about 7 months on charterers' option and charterers option for additional about 6 months. (about means 15 days MOL)".

8.     In the course of London arbitration proceedings in a related matter, Defendant Dominion has produced the alleged Addendum dated July 17th 2006 to the Charter party dated April 6, 2006. Arbitration proceedings in London will be initiated under both versions evidencing the time charter. *See Declaration of Roy Hewett ("Hewett Declaration") annexed hereto as Exhibit "2"*.

9.     During the course of the charter, a dispute arose between the parties under the charter party and fixture recap, both of which together constitute the contract between the parties.

10.     The Defendant Dominion commenced proceedings against the Plaintiff in the United States District Court for the Eastern District of Louisiana under docket number 07-7376,

2

pursuant to Rule B of the Supplemental Rules for Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

11.    An Order providing for the attachment of Plaintiff's property in the amount of $7,782,500.00 was issued by the District Court for the Eastern District of Louisiana on October 25, 2007.

12.    Pursuant to the Order, Plaintiff's Vessel was attached and detained in Louisiana.

13.    In order to secure the release of the Vessel, Plaintiff provided security in favor of the Defendant Dominion, in accordance with the Louisiana Eastern District Court's Order dated November 13, 2007, in the amount of $800,000.00.[1]

14.    Defendant Dominion then filed a Motion for Reconsideration on November 14, 2007.

15.    The Motion for Reconsideration did not set forth any new evidence or raise any alleged errors of law or fact, or demonstrate how the Court's November 13, 2007 Order would result in manifest injustice. Nonetheless, the Motion for Reconsideration hade the effect of continuing the Vessel's detention under attachment, further delaying its release, whil the Motion was pending

17.    At the time the Motion for Reconsideration was filed, Defendant Charterer had no claim based in law, equity or admiralty upon which to justify continuing the attachment of Plaintiff's Vessel.

18.    In filing its Motion for Reconsideration, Defendant Charterer acted in bad faith, with a malicious intent, and/or with reckless disregard of Plaintiff's rights,

---

[1]    On December 7, 2007, Plaintiff filed a Motion to Set Counter-Security in the amount of $930,000 in the Louisiana Eastern District Court on matters separate and distinct from those set forth herein. Said Motion is currently pending.

3

19.    The Louisiana Eastern District Court denied Defendant Dominion's Motion for
Reconsideration and ordered the release of the Vessel. *A copy of the Order and Reasons dated*
*December 5, 2007 denying Defendant Charterer's Motion and ordering the release of the Vessel*
*is annexed hereto as Exhibit "3."*

20.    Due to Defendant Dominion's wrongful filing of the above-referenced Motion for
Reconsideration, the Vessel remained wrongfully under attachment and was unreasonably and
wrongfully delayed and detained.

21.    As a result of the wrongful attachment, detention and improper delay, Plaintiff has
suffered damages resulting from loss of earnings in the sum of $80,000.00 per day for a total of
21 days and 22 hours.

22.    Therefore, as a result of the Defendant Dominion's wrongful attachment,
detention and improper delay, Plaintiff has sustained damages in the principal amount of
$1,753,328.00, exclusive of interest, arbitration costs and attorneys' fees.

23.    After the Vessel was released from attachment in the Louisiana Eastern District,
Defendant Dominion then initiated proceedings against Plaintiff and in Italy and caused the re-
arrest of the Vessel.

24.    On January 11, 2008, the Vessel was re-arrested in Taranto, Italy for exactly the
same claims as those advanced by the Defendant Dominion in the above-referenced action in the
Louisiana Eastern District Court.

25.    The Vessel was eventually released from arrest in Taranto, Italy on January 26,
2008.

26.    Defendant Dominion commenced the arrest proceeding in Italy against the
Plaintiff in bad faith and/or was grossly negligent in that the basis for the Italian proceedings was

4

exactly the same claims as those advanced in the Louisiana proceedings for which security was ordered by the Louisiana court and was already fully provided by the Plaintiff herein. *See Hewett Declaration, ¶ 18-23_.*

27. As a result of the Defendant Dominion's wrongful arrest of the Vessel in Italy, Plaintiff suffered further damages resulting from loss of earnings in the sum of $80,000.00 per day for a total of 15 days.

28. Therefore, as a result of the Defendant Dominion's wrongful arrest of the Vessel in Italy, Plaintiff sustained further damages in the principal amount of $1,200,000.00, exclusive of interest, arbitration costs and attorneys' fees.

29. Pursuant to the above-referenced charter party contract, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

30. Under English law, Plaintiff is entitled to damages resulting from Defendant Charterer's wrongful arrest, detention or delay of Plaintiff Vessel, as described above. *See Hewett Declaration ¶7-16.*

31. Despite due demand, Defendant has failed to pay the sums due and owing to Plaintiff.

32. By this proceeding, Plaintiff is commencing arbitration proceedings against Defendant Dominion on its claims.

33. Interest, costs and attorneys' fees are routinely awarded to the prevailing party in arbitration proceedings where English law applies. As best as can now be estimated, Plaintiff expects to recover the following amounts in the Final Arbitration Award(s):

> A. Principal claim for wrongful detention:
> $80,000.00 per day
> for 21 days and 22 hours      $1,753,328.00

| B. | Principal claim for wrongful arrest:<br>$80,000.00 per day for 15 days | $1,200,000.00 |
|----|---|---|
| B. | Interest on claims:<br>3 years at 6.5%, compounded quarterly | $ 630,262.58 |
| C. | Estimated attorneys' fees and expenses: | $  40,000.00 |
| D. | Estimated arbitration costs: | $  30,000.00 |

**Total**                                                                      **$3,653,590.58**

34.    Upon information and belief, Defendant Dominion uses Defendant Aegean, among other things, as a "paying/receiving agent" or "pass through" entity such that it can insulate its property, assets, funds, etc. from creditors relating to its contracts.

35.    It is not general practice in the maritime community, nor any where else, for independent companies to make or receive large payments on behalf of other independent companies.

36.    Payments sent or received on behalf of another independent company are suggestive of a relationship that is not "arms length."

37.    Upon information and belief, Aegean receives payments and/or is directed to send payments on Dominion's behalf where Aegean has absolutely no contractual relationship and/or debt to Dominion's creditors.

38.    In the further alternative, Defendants are partners and/or joint venturers.

39.    In the further alternative, Defendants are affiliated companies such that Aegean is now, or will soon be, holding assets belonging to Dominion, or vice versa

40.    The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during

6

the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of one or more garnishees which are believed to be due and owing to the Defendant.

41.   The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any assets of the Defendant held by the aforesaid garnishee for the purpose of obtaining personal jurisdiction over the Defendant, and to secure the Plaintiff's claims as described above.

**WHEREFORE**, Plaintiff prays:

A.   That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B.   That the Court retain jurisdiction to compel the Defendant to arbitrate in accordance with the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*;

C.   That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds held by any garnishee within the District which are due and owing to the Defendant, in the amount of **$3,653,590.58**

7

calculated to date to secure the Plaintiff's claims, and that all persons claiming any interest in the

same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters

alleged in the Complaint;

    D.    That this Court recognize and confirm any arbitration award(s) or judgment(s)

rendered on the claims set forth herein as a Judgment of this Court

    E.    That this Court retain jurisdiction over this matter through the entry of any

judgment or award associated with any of the claims currently pending, or which may be

initiated in the future, including any appeals thereof;

    F.    That this Court award Plaintiff its attorneys' fees and costs of this action;

    G.    That Plaintiff have Judgment on its claims as alleged herein; and

    H.    That the Plaintiff have such other, further and different relief as the Court

may deem just and proper.

Dated: January 30, 2008
     New York, NY

                        The Plaintiff,
                        DORMIN SHIPPING S.A.

                        By:

                        Kevin J. Lennon (5072)
                        Nancy R. Peterson (2871)
                        Patrick F. Lennon (2162)
                        Coleen A. McEvoy
                        LENNON, MURPHY & LENNON, LLC
                        420 Lexington Ave., Suite 300
                        New York, NY 10170
                        (212) 490-6050 – phone
                        (212) 490-6070 – fax
                        kjl@lenmur.com
                        nrs@lenmur.com
                        pfl@lenmur.com
                        cam@lenmur.com

## ATTORNEY'S VERIFICATION

State of New York)
                 )     ss.:     New York
County of New York )

1.     My name is Kevin J. Lennon.

2.     I am over 18 years of age, of sound mind, capable of making this

Verification, and fully competent to testify to all matters stated herein.

3.     I am a partner in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the

Plaintiff.

4.     I have read the foregoing Verified Complaint and know the contents

thereof and believe the same to be true and accurate to the best of my knowledge, information

and belief.

5.     The reason why this Verification is being made by the deponent and not

by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now

within this District.

6.     The source of my knowledge and the grounds for my belief are the

statements made, and the documents and information received from, the Plaintiff and agents

and/or representatives of the Plaintiff.

7.     I am authorized to make this Verification on behalf of the Plaintiff.

Dated:     January 30, 2008
           New York, NY

                                          _____
                                          Kevin J. Lennon

# EXHIBIT 1

Print For: te
Type.....: Email - Internet
Msg.Nr...: IN 123779
Created..: 10-Dec-2007 21:00
From.....: "Prime Maritime Inc." <charterin
Subject..: LgINT Message (REF:070R58VC0)
Comment..: Recvd: (CPID:4/SECS:0)

TELiX MSG: 0R58V-00 10/12/07 21:01

P R I M E   M A R I T I M E   I N C. - PIRAEUS

TEL:+30-2104527301, +30-2112002300 FAX: +30-2104527006
TLX: 212791/2 PRIM GR - HOMEPAGE:www.primemaritime.com

GD DAY

MV CAPETAN MINAS - ATLAS SHIPPING A/S CPH - CP 10.12.2007,
--------------


// FIXTURE RECAP  (main terms + op dets) CLEAN ON ALL SUBS //

M/V 'CAPETAN MINAS"  (EX- CHIOS UNITY)
---
T Y P E    : SINGLE SCREW MOTOR BULK CARRIER-STRENGTHED FOR HEAVY
             CARGOES-HOLDS 2/4 MAY BE EMPTY
B U I L T   : FEBRUARY 1984
Y A R D    : SUNDERLAND SHIPBUILDERS LTD/DEPTFORD-UK
F L A G    : PANAMA
PORT OF REG : PANAMA
I M O   N O : 8200266
C L A S S  : HIGHEST CCS
CALL SIGN  : 3FOJ5
O W N E R S : DORMIN SHIPPING SA
MANAGERS   : METFAN TRADING CORP - PIRAEUS / GREECE
COMPLEMENT : 2 GREEKS + 22 PHILIPPINOS

PRINCIPAL DIMENSIONS
SUMM DWT / DRAFT : 45.260 MT / 21.917 M
WINT DWT / DRAFT : 44.020 MT / 11.669 M
TROP DWT / DRAFT : 46.503 MT / 12.165 M
LOA / BEAM       : 182.827 M  / 31.00 M
LBP / DEPTH MOULD : 175.000 M  / 16.76 M
TPC ON SUMM DRAFT : 50.50 T/CM
GRAIN CAPACITY    : 1.907.520  CFT


T O N N A G E
GRT / NRT INTERN  : 26239  / 14650
GRT / NRT SUEZ    : 26.860,61 / 23.002,18
GRT / NRT PANAMA  : 27.739,50 / 20.342,99

HO / HA    : 5/5
HATCH COVERS : MACGREGOR HYDRAULICALLY OPERATED FOLDING TYPE SUITABLE FOR ONE
               A SINGLE TIER OF CONTAINERS

HATCH DIMS  : NO 1 14,40 X15,24 -NO 2/3/4/5  19,80 X 15,24 M
CARGO CRANES : THREE 23 TONS S.W.L CRANES

HATCH COVER STRENGTH: 2.70 TONS/SQM
MAIN  DECK  STRENGTH: 3.70 TONS/SQM
TANK  TOP  STRENGTH: 25  TONS/SQM

MAIN ENGINE  : B+W 6LG7GFCA (10.200 BHP)
GENERATORS   : 3 X DAIHATSU (575 KW EACH)

SPEED / CONS :  ABT 12 KN ON ABT 28 MT IFO 180 CST
                P L G S  -ABT 2.5 MT MDO
PORT CONS   :  ABT 3.5 MT MDO

SPEED AND CONSUMPTION ARE GIVEN IN GOOD WEATHER CONDITIONS/SMOOTH SEA
ONLY - NO SWELL - NO ADVERSE CURRENTS .

WITHIN THE CONTEXT OF THIS CHARTER PARTY, GOOD WEATHER CONDITIONS ARE
UNDERSTOOD TO MEAN WINDS UP TO AND INCLUDING BEAUFORT FORCE 4 AND/OR
DOUGLAS SEA STATE 3.

VSL BURNING MDO IN M.E. WHEN MANOEUVRING / STEAMING UNDER RESTRICTED
/ CONFINED WATERS, RIVERS, CANALS, ESTUARIES, ETC.

BUNKERS SPECS : IFO 180 / MDO DMB (ALL AS PER ISO 8217 2005)

IFO  CAPACITY  :  2490  MT  (BSS 96 PCT FULL)
MDO  CAPACITY  :   300  MT  (BSS 96 PCT FULL)
BLST CAPACITY  : 25300  MT  (INCL BLST HO.4)
F.W. CAPACITY  :   360  MT

GRAIN BREAKDOWN IN CFT
HOLD NO.1 =   289,580
 ''  NO.2 =   403,152
 ''  NO.3 =   400,327
 ''  NO.4 =   399,479
 ''  NO.5 =·  414,982
T O T A L = 1,907,520

ALL DETS ABT

for

all negos and eventual fixture to remain strictly p+c and not to be
reported to 3d parties ----pls all  involved pay the proper attention
to the clause --

accnt atlas shipping a/s cph
dely sw pass atdnshinc
1/c 10/12 dec (00:01-24:00 hrs )
for one tct via sps,sbs,sas aaaa alw w/in iwl from texas to greece or
turkey with green delayed petcoke ,dur abt 30 ds wog
hire usd 80.000 payable every 15 ds in adv into ows nominated bank accnt in
piraeus with swift copy to ows by fax or email .
1st 15 ds hire plus value of estimated consumption of ifo up to rdly to be
paid upon vsl's dely .
vsl to be delivered with abt 1020 tns ifo and abt 55 tns mdo and to be
rdlvrd with ifo as on board and mdo abt same qty as on dely .prices to
apply for ifo usd 495 and for mdo usd 810.·
rdly dlosp mylaki chopt 1sp within turkish med atdnshinc
sub further / terms details to be based on ows executed c/p to be provided

by prime monday am .
all chrs subs lifted 1650 hrs greek time monday 10th dec ,however
vsl to be considered delivered to chrs service and time to count upon
chrtrs lifting subs even if cp dtls have no been agreed yet .
3,75 pcnt addr +1,25 pcnt to prime maritime

owise as per the agreed proforma c/p of mv dorothea/acct toepfer
cp dd 13/09/2006,  strictly and logically amended as per m/t and
below c/p further terms/dets .

cls 29.- delete from ' vessel is fully grain ... till ... one hold
        slack'

cls 30.- delete 1st three lines, ie :
        from  '' the owners warrant that ... setion 1351 (F)''

cls 42.- to read:
        vsl's crew is poea fitted

cls 47,- 5th line :  delete ' Stevedores stand-by time due thereto'

cls 53.- delete fm 'only bulk grain... till seed cakes'

        and insert :'only cargo allowed : green delayed petcoke'

cls 55.- delete 'usd 5000' and replace by 'usd 10000 (ten thousand
        dollars)

cls 57.- bunkers survey only

cls 60.- logically amended as per m/t, but also add:
        bunker specification : IFO 180 RME / MDO DMB (ALL AS PER
        ISO 8217/2005)

cls 76.- to read ... redel to be greece or turkish med only

cls 82.- to be deleted as n/a

cls 84.- to be deleted in full and to insert

        'Surveyor to be for Charterers account, time, expense
        and responsibility'


e n d s

B/RGDS

gr

Plse note our new e-mail addresses:

chartering@primemaritime.gr      for all your ORDERS
position@primemaritime.gr        for all your vessels POSITIONS
operation@primemaritime.gr       for POST FIXING/OPERATION matters
snp@primemaritime.gr             for S&P Department

# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
DORMIN SHIPPING S.A.,                                        :
                                                            :
                          Plaintiff,                        :          08 Civ. ___
                                                            :
          - against -                                       :          ECF CASE
                                                            :
DOMINION BULK INTERNATIONAL S.A.,                           :
                                                            :
                          Defendant.                        :
-----------------------------------------------------------X

### DECLARATION OF ROY ALBERT HEWETT PURSUANT TO 28 U.S.C. §1746 IN SUPPORT OF PLAINTIFF'S VERIFIED COMPLAINT AND APPLICATION FOR AN EX-PARTE ORDER OF MARITIME ATTACHMENT AND GARNISHMENT

I, ROY ALBERT HEWETT, hereby affirm as follows:

1.      I am a solicitor, formerly the senior partner of Hewett & Co. in London, and I am now the President of Hewett & Co. Inc., a claims adjusting company I established in Piraeus just over 10 years ago to handle maritime claims, which, almost exclusively, involves the pursuit or defence of London arbitration proceedings related to charterparty disputes. I have been handling such claims since 1970. I have been retained as foreign counsel for the plaintiff, Dormin Shipping S.A. (hereinafter "Plaintiff")."

2.      I am a solicitor of the Supreme Court of England and Wales and have held a practicing certificate from 1970 to the present.

3.      I submit this Declaration based on facts and information known to me personally, as well as documents and information available to me, all of which I believe to be true and accurate.

RAH

4.    I make this Declaration in support of Plaintiff's Verified Complaint and application for an Ex-Parte Order of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Admiralty and Maritime Claims of the Federal Rules of Civil Procedure contained therein.

5.    I have been retained by the Plaintiff and their Defence Association, Assuranceforeningen Skuld, with regard to the disputes which have arisen between the Plaintiff and the Defendant under the terms of the Charter Party dated July 14, 2006 and/or dated April 6, 2006. *See Verified Complaint ¶ 6-8.*

6.    The facts in relation to Plaintiff's claim as set forth in the Verified Complaint are within my own knowledge from my conduct of those disputes.

7.    Plaintiff's first claim arises from Defendant's wrongful detention of the Vessel. Particularly, the wrongful detention was caused by the Defendant's improper filing of a Motion for Reconsideration of a decision issued in a Louisiana proceeding. *See Verified Complaint, ¶ 10-20.*

8.    This claim for wrongful detention falls within the scope of the Charter Party's arbitration clause which provides that any dispute arising out of or in connection with the charterparty are to be submitted to arbitration in London.

9.    Plaintiff's claim for wrongful detention under the Charter Party has a sound basis in English law, which is outlined below.

10.    Plaintiff will be relying upon (at least in part) the judgment in "Cheshire Witch" (1864) Br. & L.362. [1] *Please find attached hereto a copy of the "Cheshire Witch" decision.*

---

[1]    This statement/submission does not limit the legal theories under which Plaintiff may bring its wrongful detention claim or any other claim against Defendant in the arbitration and/or any other

R AH

11. In "Cheshire Witch," the Court awarded a vessel owner detention damages where its vessel had been arrested and once released, the arresting party applied for the arrest to continue, pending consideration of an appeal. The arresting party decided, after the passage of time, not to appeal, but the Admiralty Judge awarded damages for that period of detention.

12. The facts of this instant case are strikingly similar to those of the "Cheshire Witch."[2]

13. Defendant filed the Motion for Reconsideration in bad faith and/or was grossly negligent.

14. The judgment denying the Motion for Reconsideration made it clear that the motion had no prospect of success because Defendant had not sought to establish that its Motion fell within any of the permissible grounds for reconsideration.

15. The Motion was simply a delay tactic which resulted in the wrongful detention of the Vessel and caused further damage to the Plaintiff.

16. Plaintiff has alleged a prima facie valid claim for wrongful detention under English law.

17. Plaintiff's second claim arises from the wrongful arrest of the Vessel.

18. On January 11, 2008, the Vessel was arrested by the Defendant in Taranto, Italy for exactly the same claims as those advanced by the Defendant herein in the proceedings in Louisiana, for which the Plaintiff herein has provided the full amount of security, as ordered by the Court.

---

proceeding. Plaintiff reserves its right to assert other legal theories, case law and/or facts against Defendant as it deems appropriate.

[2] Unlike here, the vessel in the "Cheshire Witch" was released voluntarily. However, this does not affect the soundness of Plaintiff's claim.

19.    The Vessel was released from arrest in Taranto, Italy on January 26, 2008
due to a technicality that the arresting party had not properly served the proceedings on
the Owners; they had only served them upon the Master.

20.    This claim for wrongful arrest falls within the scope of the
Charter Party's arbitration clause which provides that any dispute arising out
of or in connection with the charterparty are to be submitted to arbitration in
London.

21.    Plaintiff's claim for wrongful arrest has a sound basis in English law,
which is outlined below.

22.    Under English law, as presently formulated, the legal standard for
wrongful arrest claims requires

the claimant to establish mala fides (bad faith) or crassa neglentia (gross negligence).

23.    Defendant filed the Italian Initiating Process for arrest in bad
faith and/or was grossly negligent in that the basis for the Italian proceedings
was exactly the same claims as those advanced in the Louisiana proceedings
for which security was ordered by the Louisiana court and was already fully
provided by the Plaintiff herein. Further the proceedings were defective and
the arrest order was set aside on the technical ground indicated at paragraph 4
above. *See Verified Complaint, ¶ 23-26.*

24.    Plaintiff has alleged a prima facie valid claim for wrongful
arrest under English law. However, Plaintiff accepts that it has no claim
during the pendancy of a Port State Control detention at Taranto, which was
lifted at about 1310 on January 16th, 2008, at which time the Master of the

*R An*

ship acknowledged the receipt of the release certificate for the Port State Control detention. Thereafter the only impediment to the ship sailing was the wrongful, arrest of the ship by Defendant, which was subsequently set aside by the court.

25.    Furthermore, Plaintiff's request for interest, arbitration costs and legal fees are reasonable.

26.    Under English law, Section 59-61 of the Arbitration Act of 1996 allows for recovery of arbitrators' fees and expenses and legal or other costs.

27.    It is common for arbitration to take at least three years and arbitrators, at the present time, commonly apply interest on the principal amount awarded at the rate of 6.5 %, compounded at 3 monthly rests (quarterly).

28.    Furthermore, given the nature of the issues to be presented in the arbitration, the estimates for costs and attorneys fees in the amount of $30,000.00 and $40,000.00 are not only reasonable but conservative, in my experience.

29.    In light of the foregoing, Plaintiff's request for security for the estimated recoverable interest, attorney's fees/expenses and arbitration costs to be awarded in the underlying arbitration are reasonable and should be granted.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 30th day of January, 2008

R. A. Hewett

RAH

ROY ALBERT HEWETT

R AM

to be familiar with the navigation of the coast: Preamble to 6 Geo. IV, c. 125. The 133rd section of the last Liverpool Act (21 & 22 Vict. cap. xciii.), whilst exempting coasting vessels from compulsory pilotage, makes the exemption conditional upon the vessel having been engaged for six months in the coasting-trade. For the interpretation of the terms " employed in the coasting-trade," or " employed in foreign trade," they referred to the same or similar expressions in other Acts— 52 Geo. III, c. 39, ss. 2 and 34 ; 7 & 8 Vict. c. 112, s. 27 ; 8 & 9 Vict. c. 88, s. 13 ; 12 & 13 Vict. c. 29, s. 2 ; 13 & 14 Vict. c. 93, s. 9 ; 14 & 15 Vict. c. 96, s. 15 ; and they relied on the cases of *The* "*Agricola* " (2 W. Rob. 10), *Davison* v. *Makibben* (3 Brod. & Bing. 113).

[361] Dr. Deane, Q.C., and Lushington for the " John Mowlem."—On this particular voyage the "Sea Queen" was engaged in the coasting-trade, and the particular voyage is the only admissible criterion. The policy of the exemptions is matter for conjecture merely. Other of the exemptions named in the 379th section, viz. exemptions (3) and (4), apply only to a particular voyage. So do the provisions of the 354th section ; and the definitions of " home-trade ship," and " foreign-going ship," in section 2 of the same statute.

*Dr. Lushington* : The question is, whether a vessel ordinarily occupied in foreign trade, going from Liverpool to London in order to sail from London, under advertisement for a foreign voyage, not carrying passengers, but having on board a cargo shipped at Liverpool, and deliverable at London, is to be held " a ship employed in the coasting-trade of the United Kingdom," within the meaning of the 379th section of the Merchant Shipping Act, and as such to be exempt from the rule of compulsory pilotage. I have already decided in *The* " *Agricola*" (2 W. Rob. 10), that a vessel making a similar voyage without a cargo, and in ballast, is not a ship employed in the coasting-trade. I do not see how the fact that a vessel has a cargo on board makes any substantial difference. I am of opinion, therefore, that the " Sea Queen" was not " a ship employed in the coasting-trade " ; that she was compellable to take a pilot, and that the owners cannot be made answerable for the damages occasioned by the fault of her pilot.

Rothery, proctor for the plaintiffs.

Cotterill & Sons, solicitors for the defendants.

[362] THE " CHESHIRE WITCH." January 26, 1854.—Arrest—Wrongful detention —Damages.—A vessel having been arrested in a cause of damage, and the suit having been dismissed with costs, the plaintiff obtained leave to detain her for twelve days, that he might have time to consider whether he would appeal. On the thirteenth day the vessel was released. *Held*, that the defendant was entitled to damages for the twelve days' detention.

[S. C. 11 L. T. 350 ; 2 Mar. L. C. (Crockford) 145.]

In this case, the " Cheshire Witch " had been arrested in a cause of damage ; and, as bail could not be procured, she remained under arrest from the 15th of August till the 20th of November, when the cause was heard, and judgment was given for the defendant, with costs. No notice of appeal was given ; but, upon the application of the plaintiff, the Court ordered that the release should not issue for twelve days. Some correspondence took place on the eighth day, and on the thirteenth day the plaintiff allowed the vessel to be released.

Deane, Q.C., now moved the Court to condemn the plaintiff in damages.—I admit that up to the 20th November, though the plaintiff has sustained a heavy loss, he cannot recover damages. But after that date, the vessel was detained at the request of the plaintiff's proctor. The vessel was under a time charter. I ask for the expenses of the twelve days' detention.

Clarkson, *contra*.—The Court dismissed the plaintiff's suit. An application was immediately made not to order the release until the plaintiff had time to consider if he would appeal. No objection was made, and nothing was said about time charter. If the plaintiff had immediately appealed, as he could have done, he would have incurred no damages, unless he had acted maliciously : *The* " *Evangelismos* " (Swab. 378). Here there was no malice : no improper delay.

*Dr. Lushington* : This case has operated very severely on the defendant. His ship was under arrest for some months ; and then it turned out that the plaintiff had no cause of action.

[363] The plaintiff's application for time to consider whether he would appeal was for his own convenience only.

I shall make the order with costs: the amount of damages to be referred to the registrar.

Jenner and Dyke, proctors for the plaintiffs.

Deacon & Son, proctors for the defendants.

### IN THE PRIVY COUNCIL.

*Present*—Lord Kingsdown.
The Master of the Rolls.
Sir Edward Ryan.

THE "CITY OF CARLISLE." July 23, 1864.—Collision—Lights—Position of—Admiralty regulations, 1858.— The Admiralty regulations of 1858, with respect to the exhibition of side lights by sailing vessels, do not require that such lights should be placed on any particular part of the ship; such lights may be carried inboard, provided that they are fairly visible in the appointed directions. Circumstances considered under which the regulations were sufficiently complied with.

[S. C. 2 Moore, P. C. 366 ; 15 E. R. 940 ; 11 L. T. 33.]

[367] THE "KARLA." December 6, 1864.—Costs of suit—Costs of detaining foreign seamen as witnesses—Charge for agency.—A party in a cause is not bound to examine any of his witnesses before the hearing ; and if judgment is given in his favour with costs, he is in general entitled, with respect to seamen who are reasonably detained by him as necessary witnesses, to the expenses of maintaining them to the time of the hearing.  In the case of the witnesses being foreign seamen, a reasonable charge incurred for agency or interpretation may be allowed.

[S. C. 13 W. R. 295.  Distinguished, *The* "*Riveli*," 1870, 23 L. T. 196.  Applied, *The* "*City of Brussels*," 1873, L. R. 4 Ad. & Ecc. 197.  Discussed, *The* "*Ibis VI*.," [1921] P. 260.]

This was a motion on the part of the plaintiffs to review the registrar's taxation of the defendants' bill of costs.

On the 28th September 1863 the cause was instituted by the plaintiffs, the owners of the "Joseph Straker," against the foreign ship "Karla," to recover damages occasioned by a collision.  On the 14th October the owners of the "Karla" entered an appearance.  There was also a cross-action.  One of the "Karla's" witnesses was, upon application, examined before the trial.  Her other witnesses, four in number, being all seamen belonging to the ship, were examined at the trial, which took place on the 23rd December 1863, resulting in judgment for the "Karla."

[368] In taxing the defendants' costs, the registrar had allowed to each of these four seamen who had been examined at the trial maintenance money from the 14th October 1863 to 31st December 1863.  He also allowed the sum of £10, 10s., a sum paid to Mr. Wendt, as a charge for agency.  These were the items objected to.

Deane, Q.C., in support of the motion.—It is submitted that if the defendants did not avail themselves of the power given by the rules of the Court (rules 78, 79), to have their seamen examined immediately upon the institution of the cause, they should not now charge the other side with the expense of maintaining them until the trial : such expenses would not be allowed in the Courts of Common Law ; the witnesses would get their ordinary expenses, and no more.  There is no authority for allowing any charge for agency when the witnesses are in London.

The Queen's Advocate (Sir R. Phillimore), *contra*.—There is no obligation upon a defendant to produce his witnesses before the hearing.  To compel a foreigner defendant to do so, by inflicting a pecuniary loss upon him if he does not, would expose him to an unjust disadvantage.  These expenses were just and necessary ; so also was the charge for agency, for here the seamen were foreigners.

*Dr. Lushington* : I am happy to say that these questions of taxation very seldom come under the consideration of the Court.  I have every reason to believe that in the administration of justice by the registrar, and in examining the accounts which are given in, and the charges, great pains and attention are paid in order that no

# EXHIBIT 3

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

DOMINION BULK INTERNATIONAL S.A.                    CIVIL ACTION

**VERSUS**                                          NO. 07-7376

DORMIN SHIPPING S.A., in personam, and             SECTION B(4)
the M/V CAPETAN MINAS (formerly the M/V
CHIOS UNITY), her engines, tackle,
appurtenances, furniture, equipment, etc., in rem

### ORDER AND REASONS

Before this Court is Defendant's Motion for Vessel Release
(Rec. Doc. No. 41) and Plaintiff's Motion for Reconsideration
(Rec. Doc. No. 45). After review of the pleadings and applicable
law, and for the reasons that follow,

**IT IS ORDERED** that Plaintiff's Motion for Reconsideration is
**DENIED. IT IS FURTHER ORDERED** that Defendant's Motion for Vessel
Release is **GRANTED.**

### BACKGROUND

On October 25, 2007, this Court granted Plaintiff, Dominion,
motion for Writ of Foreign Attachment and Garnishment and the
motion for Issuance of Warrant in rem. As a result, the U.S.
Marshal seized the vessel at issue, M/V CAPETAN MINAS. Defendant
filed a Motion to Vacate and Set Counter-Security and requested
an expedited hearing on the matter. On November 13, 2007, this
Court heard oral arguments by both parties and decided the
following: the Defendant's Motion to Vacate Attachment was denied

1

and the Defendant was required to pay $800,000.00 in security to
Plaintiff.  (Rec. Doc. No. 44).  Since the issuance of this
order, Defendant has paid the $800,000.00 security and met all
the requirements of the United States Coast Guard to lift its
detention of the vessel, leaving the only remaining impediment to
the vessel in resuming its trade activity as this Court's
attachment.  Defendant, therefore, filed its Motion for Vessel
Release (Rec. Doc. No. 41).  Meanwhile, Plaintiff has filed a
Motion for Reconsideration to contest the amount of security
ordered by the Court.  (Rec. Doc. No. 45).

Defendant contends that the vessel should be released as
Defendant did provide security in favor of Dominion Bulk
International S.A. in the amount of $800,000.00 as ordered by the
Court.  Defendant acknowledges that Dominion filed a Motion for
Reconsideration with this Court, but asserts that the motion
presents no new evidence and offers no new argument that this
Court has not already consider in the November 13, 2007 oral
arguments.

In opposition to Defendant's Motion to Release, Plaintiff
asserts that its motion for reconsideration, which has been filed
within ten days of the ruling to be reconsidered, should be
considered as a motion to alter or amend judgment under Rule 59e.
As such, Plaintiff cites as the basis of reconsideration that the
judgment is based upon manifest errors of law or fact and that

2

manifest injustice will result. Finally, Plaintiff states that Dormin's argument of the urgency of releasing the vessel is unfounded as more obstacles, other than this Court's attachment, prevent the departure of the ship, such as the arrest or several crew members who have not been replaced.

In Plaintiff's Motion for Reconsideration, Plaintiff indicates that it agrees with every aspect of the ruling except for the amount of security determined by the Court, which is void of the off-hire and loss of profit costs. In addition to asking the Court to order security for Dominion's off-hire claim in the amount of $995,400 plus interest, costs and attorney's fees, and at the very least, if not both, security for loss of profit for the charter period in the amount of $3.243,200 and/or for the extra voyage in the amount of $2,250,000.00, plus interest, costs and attorney's fees.

## DISCUSSION

### A. RECONSIDERATION

A motion for reconsideration challenging the prior judgments on the merits may be treated as a motion "to alter or amend" under Rule 59'(e) if filed within ten days of judgment. *See Lavespere v. Niagara Mach, & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir.1990) (abrogated on other grounds); *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 353 (5th Cir.1993). Specific grounds to alter or amend judgments are not listed in Federal Rule of Civil Procedure 59, and a district court has considerable

3

discretion in deciding whether to grant such a motion. *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir.1993). However the courts have identified several grounds upon which a Rule 59(e) motion may be granted, including: (1) that the judgment is based upon a manifest error of law or fact; (2) the existence of newly discovered or previously unavailable evidence; (3) that reconsideration is necessary to prevent manifest injustice; or (4) that serious misconduct of counsel justifies relief. *See Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir.1993); *see also Freeport-McMoran Sulphur LLC v. Mike Mullen Energy Equipment Resource*, Inc., 2004 WL 1488665, at *1 (E.D. La. 2004).

Plaintiff alleges that this Court's determination of the security in the amount of $800,000.00 is based from manifest errors of law or fact and that manifest injustice will result. Plaintiff makes this assertion because of the Court's exclusion of the off-hire and loss of profit costs to the Plaintiff. Plaintiff cites *Dongbu Express Co. Ltd. v. Navios Corporation* to assert that Plaintiff need not prove its damages with exactitude, but the court must only be satisfied that Plaintiff's claims are not frivolous. 944 F. Supp. 235 (S.D.N.Y. 1997). Instead, Plaintiff need only present a prima facie claim, which it claims to have done. *Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty., Ltd.*, 460 F.3d 434 (2nd Cir. 2006).

The Court did, in fact, order payment of security, but the

4

evidence presented before this Court regarding off-hire and loss
of profit proved too speculative and were thus denied in the
November 13, 2007 court order. Plaintiff has failed to
demonstrate how this ruling was based on error of fact or law or
how this ruling would result in manifest injustice. Instead,
Plaintiff rehashes and reargues points already heard by this
Court during oral argument held on November 13, 2007. Therefore,
Plaintiff's motion for reconsideration is denied.

### B. VESSEL ATTACHMENT

Per the Court's order, Defendant has provided Security in
the amount of $800,000.00. Specifically, Defendant has obtained
a Vessel Release Bond issued by Court-approved surety
International Fidelity Insurance Company in this amount.
However, the Vessel has not yet been released. Plaintiff offers
no response specifically addressing the issue of why the vessel
should not be released. Rather, Plaintiff merely attacks the
Defendant's assertions of urgency of vessel release and asks this
Court to deny the Motion for Release based upon a new security
amount it asks this Court to order. Seeing as though the
security has been provided and there are no compelling reasons
asserted to justify the continued attachment of the vessel, this
Court orders the release of M/V CAPETAN MINAS, the vessel at
issue.

### CONCLUSION

5

In sum, the issues presented before the Court concerning the amount of security have already been heard and addressed by the Court during oral argument on November 13, 2007. Plaintiff fails to point out errors of law or fact, presents no new evidence, and fails to demonstrate how the Court's November 13, 2007 order will result in manifest injustice. Accordingly, **IT IS ORDERED** that Plaintiff's Motion for Reconsideration is **DENIED**. Defendant's Motion to Release Vessel Under Attachment is **GRANTED**, as Defendant has complied with this Court's order to post $800,000.00 security.

New Orleans, Louisiana this 5th day of December, 2007.

IVAN L. R. LEMELLE
UNITED STATES DISTRICT JUDGE

6